IN THE UNITED STATES FEDERAL COURT
FOR THE WESTERN DISTRICT OF TEXAS

FILED
2021 JUN 24  AM 11: 12

| | |
|---|---|
| POON, GINGER : | |
|    PLAINTIFF : | |
|        VS. : | Case No. 1:21CV0569 RP |
| VISA U.S.A INC. : | |
|    DEFENDANTS : | |

## PLAINTIFF'S ORIGINAL PETITION

TO THE HONORABLE JUDGE OF SAID COURT:

AND NOW, comes the Plaintiff, Ginger Poon, by and through herself, *pro se*, to file the instant complaint and in support thereof avers as follows:

1. The Plaintiff initiates the instant action against the Defendant due to wrongful termination of employment resulting in loss of compensation, discrimination, retaliation, and pain and suffering resulting from a 4-year period of working where experienced substantial unacceptable treatment.

2. The Plaintiff is entitled to bring the instant action against the Defendant for the various causes of action described in the instant petition pursuant to the laws and legal standards described herein, thereby giving rise to the instant petition.

3. The Plaintiff is seeking compensatory and / or punitive damages for each of the claims herein as well as declaratory relief in her favor.

## PARTIES AND SERVICE

4. PLAINTIFF – Ginger Poon - is the Plaintiff in the instant matter with an address of 7717 Yaupon Dr, Austin, Texas 78759

5. DEFENDANT – Visa U.S.A Inc. - is the Defendant in the instant matter with the registered agent: Corporation Service Company, 211 E. 7th Street, Suite 620, Austin, TX 78701-3218 USA

## JURISDICTION AND VENUE

6. Jurisdiction is proper in the instant matter pursuant to Title II of the Civil Rights Act of 1964.

7. Venue is appropriate in Travis County, Texas because all or part of the conduct giving rise to the causes of action were committed in Travis County, Texas and Plaintiff and the property which are subject of this suit are located in Travis County, Texas. Accordingly, venue is proper pursuant to Texas Civil Practice & Remedies Code §15.002.

## STATEMENT OF FACT

7. During the 4-year period that the Plaintiff was employed by the Defendant, the Plaintiff experienced numerous acts of discrimination on the basis of gender and retaliation for reporting the workplace discriminatory behaviors.

8. Because of the repeated discriminatory and retaliatory actions, the Plaintiff suffered health deterioration and loss of compensation that the Plaintiff earned and deserved.

9. The Plaintiff worked as a Program Manager for the company from June 2016 to March 2020.

10. Since August 2016, the Plaintiff had repeatedly been discriminated against and retaliated while working in a toxic workplace environment.

11. The Plaintiff was first informed that her voice wasn't "soft" enough to please their male leaders and hence was not fit into the corporate culture.

12. The Plaintiff experienced repeated attacks of unfair treatments, public humiliation and defamation by the Plaintiff's managers, including demotion, harassment, intimidation, and unequal terms and conditions.

13. Every time the Plaintiff filed complaints to HR and Business Conduct Office (BCO), the Plaintiff was relieved from some attacks for a few months, but then the vicious cycle of attacks and retaliation would start again including damages to the Plaintiff's projects and partnerships, loss of compensation, demotion, and job replacements by males.

14. The Plaintiff's Management's motto was if they could not fire her, they would make the Plaintiff's work environment toxic enough that the Plaintiff would leave. For example, the Plaintiff went on FMLA in June 2019 to care for her ailing father. When the Plaintiff returned to work from her one-month FMLA leave, all of their projects were assigned to a male Program Manager just two days before the Plaintiff's scheduled return.

15. After the Plaintiff's FMLA leave, the Plaintiff continued to be harassed and the retaliation continued. the Plaintiff's manager accused the Plaintiff of not showing up to work for days and ordered the Plaintiff of having a different work hour of 8 to 5 pm while everyone else would come in at 10 am and leave at 4 pm to work from home.

16. The Plaintiff, was undermined on her projects. They were not allowed to adhere to the processes all projects need to follow because the managers supported deviations so that the projects would be ruined.

17. The Plaintiff reported the incidents of retaliation again to BCO. BCO concluded the case in favor of the Plaintiff in August 2019 and the Plaintiff received apologies from BCO, but no remedies. The Plaintiff was told to "move on" and all of the offenders were warned. However, BCO refused to remedy the Plaintiff's compensation losses and damages while the retaliation continued and the male offenders received promotions while the Plaintiff did not.

18. Although BCO told the Plaintiff to move on, the vicious retaliation continued.

19. The Plaintiff was so distraught and began to experience severe depression and hair loss.

20. The Plaintiff was prescribed by her doctor of 6-month work-from-home work accommodation. The Plaintiff's manager disapproved the Plaintiff's medical work from home accommodation citing performance concerns.

21. The Plaintiff's manager would humiliate her in public meetings and sabotage the Plaintiff's projects and partnerships with underhanded interference and meddling. The manager would always tell the Plaintiff that he would hold the Plaintiff accountable for the Plaintiff's projects even after he ordered the Plaintiff to execute his poor managerial decisions as the root causes of many issues. Her manager would then slander and defame the Plaintiff's name in front of her peers and colleagues in order to have them dishonor the agreements and plans of the project that they had established earlier with the Plaintiff.

22. The Plaintiff filed another complaint to HR for more retaliation and counter factual FY19 annual review which led to loss of compensation for yet another year. While HR was takeing time to investigate, the Plaintiff's manager again continued to try to ruin the Plaintiff's reputation and sabotage the Plaintiff's projects in order to alienate the Plaintiff and cause others to go against her.

23. To the shock and surprise of the Plaintiff, HR concluded on 02/19/2020 that the case presented "no misconduct of the manager found or that can be substantiated". The Plaintiff questioned the conclusion which conflicted with the conclusion of the BCO in August 2019. HR responded as it was the Plaintiff's misunderstanding. After the Plaintiff expressed disappointment, the Plaintiff informed HR that she would be opening a case with the EEOC to seek options.

24. To the surprise of the Plaintiff on the following day of 02/20/2020, HR along with her manager presented the Plaintiff the ultimate retaliation by asking the Plaintiff to leave immediately or putting the Plaintiff on a 30-day notice to fire the Plaintiff.

25. During the 30 day period, the manager would make up faults of the Plaintiff; for example, he would claim that the Plaintiff did not have a plan for their project. After the Plaintiff showed them the plan the Plaintiff established several months ago with the teams, he said it wasn't what he was looking for instead. When the Plaintiff asked for an example of what he was looking for, he would say that the Plaintiff was supposed to know her job.

26. The end of the 30 days concluded with the firing of the Plaintiff for the only reason that the manager was not happy with the Plaintiff's 30 day performance.

27. Below is a timeline of the experiences that the Plaintiff has experienced in the instant matter as described by the Plaintiff directly in her own words

### i. Unequal Treatment During 2016

28. Two weeks after I started my job, two male leaders whose teams I worked with – decided that I did not fit their taste of a submissive and obedient women, specifically they did not like my voice (not "soft" enough for them). They hired a male PM to replace me and I was put on a performance improvement plan to be fired which has nothing to do with my job performance. I survived the performance improvement plan with the HR's help and was elevated to take on a large and complex project. But the sexism did not stop there.

### ii. Unequal Treatment During 2017

29. After I took on a dead project and revived it with my project management skills and got thumbs up from the people I worked with. My management continue to spread the rumors of my "not soft enough" voice and continued to coached and monitored my use of my voice and had my co-worker to demean me with the prior year performance improvement plan. I was also

assumed and questioned by my management if I got to run the large and complex position because of backdoor intimate relationship with the SVP which was false and convenient assumption on their own to ruin me.

### iii. Unequal Treatment During 2018

30. 2018 - After successful completion of the 2017 large and complex project, I was announced by the SVP to move me up to report to my male VP who was the driving force of the 2017 discriminatory actions and spread the rumors about me. So, the VP did not want me. He took away my projects; put me on a bench without work for months. Once again, I filed complaint against him to HR and BCO to get relief. Once again, he hired a new male PM to replace me.

31. Then I took part in woman in technology initiative by raising concerns about the workplace discriminatory environment along other women in a fireside chat with the SVP and sent emails along with the other women asking to allow women organize their turns to attend an outside women conference as the alternative to be decided by 3 male leaders. Shortly after that, I was mocked by my male-coworkers and my VP demoted me to report to the other sexist I reported to HR in 2016. I once again to sought HR and BCO's help to stopped him.

### iv. Unequal Treatment During 2019

31. So my VP figured he could not demote me to report to one of his sexist reports, he brought in another male Sr. Director to replace me and demote me to report to him instead.

32. My new manager scolded me to complaint about the "toxic workplace", ordered me to come in to the office that drastically changed from the normal work hours that my office adopted, disapprove my work-from-home (WFH) medical accommodation. After I complained to HR, HR

approved the work-from-home medical accommodation contingent on monthly performance review.

33. My manager ignored and went against the WFH agreement that I kept the same office hours as I would in the office and continued to demand I came online with the drastically changed hours he had in mind.

34. My manager was under the direction from my VP (old manger) to attack me. He attacked my paid-time-off (PTO) I used for medical appointments. One time when I voiced my bandwidth concern because he overloaded me with projects (more than my male peers and the organization's rule of thumbs), he argued, "if you have time for taking PTO you have time for this project." when my appointments/pto conflicted with his meetings, he asked for details of what my medical appointments were for, which was unusual and not consistent with the common management practices there in the workplace.

35. Two days before I returned from my FMLA last year, he replaced me with his contracting PM (male) and he also wanted me gone so this contracting male PM could have my position. Even though, I got my job back relatively quick, this would be the fourth time I replaced by a male PM without faults on my part, including the 3rd time, I was replaced by my manager.

36. Bad mouth and spread rumors like "difficult to work with", "don't understand technology" behind my back to signal people to keep distance from me or refuse/ignore to work with me.

37. Excluded me from critical project communications for my assigned projects (such as OPC reduction and A2C BOT solution).

38. Accused me either ways whenever is convenient for him. Expect "PM do work without escalation" vs "you did not escalate"

39. Step-ins and hijack my projects to cover up project misconducts that caused the project mishaps. He first explained to me that it is his style and "you just need to get used to it". Only later on wrote me up to justify his misconducts as based on unnamed "stakeholders' consistent feedback" to him.

40. Operated one-sided feedback system – he took only negative feedback from the retaliation, my feedback got ignored.

41. Pressured me to falsify weekly updates and slipped in random dates and later on accusing me missing dates to cover up for miss of dates and refuse to do their jobs and frame me.

42. Framed me with backdoor and under the table dealings to colluded with the other retaliation ring members and ruin my projects (A2C VD employee pilot sbx 20.03 and masterpom 1.11 upgrade to ruin my A2C project).

43. Gave opposite directions of the established project plan to my project teams to cause project misshapes to ruin my project and frame me. He would said, "you cannot move the A2C milestones" and yet later on, "you are not flexible to change the milestones" so he can frame me regardless.

44. Manipulated my partnerships to alienate people who used to work well with me before his interference to abandon the agreements reached with me and refuse to work with me or ignore me. He would tell people behind my back to ignore abandon the agreements they reach with me.

v. Unequal Treatment During 2020

45. The manager Overrode and humiliated me in his public meetings. Calling me "no traction", "no plan" while all the project activities and plans were documented in various project artifact tracking systems according to my job requirements that he had reviewed and approved before.

My voice wasn't heard or rejected in his public forums. When I asked questions or voice concerns, I would consistently get answers like, "take it offline" or "we already discussed that".

46. Harassed me to alter my weekly executive reporting to compromise the governance function by covering up issues and mishaps of the project while pointing a finger to the partners and framed me.

47. Expected me to do the others' jobs when they refused (like managing bug board and all envs for dear us, come up with task lists without architecture strategy and design for opc, to assist team's need to by-pass the established engineering process, etc).

48. Harassed me to apply double standards, look the other way or join misconducts or being fired when he needed to protect someone by ignoring accountability.

49. Applied double standards. I wasn't allowed hold any teams accountable for their misconducts, I wasn't allowed to do my job without his interference and meddling. It must be his ways even though they were harmful to me and my projects.

50. Eventually he fired me with the support of the new SVP and VP after I complained to EEOC.

51. Based on the foregoing, the Plaintiff is seeking any and all applicable relief for the causes of action claimed herein including but not limited to compensatory damages for the wrongful termination of the Plaintiff as well as punitive damages for the egregious and reprehensible misconduct intentionally engaged in as described herein.

## COUNT I

## GENDER DISCRIMINATION

## PURSUANT TO TITLE VII OF CIVIL RIGHTS ACT - 42 U.S.C. 2000e-17

## (AGAINST ALL DEFENDANTS

52. The Plaintiff hereby references and incorporates Paragraphs 1 through 51 as if though set forth herein at length.

53. The Plaintiff alleges that she were unequally treated on the basis of gender in violation of Title VII, which forbids sexual harassment in the workplace as a form of sex discrimination. *See Matherne v. Ruba Mgmt.*, 624 F. App'x 835, 838–39 (5th Cir. 2015) (per curiam).

54. There are two types of sexual harassment under Title VII: *quid-pro-quo* and hostile-environment harassment. *See Casiano v. AT&T Corp.*, 213 F.3d 278, 283 (5th Cir. 2000).

55. Tangible employment actions "require an official act of the enterprise, a company act," such as "hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits" - this is evident in the instant matter with the firing of the Plaintiff for filing an EEOC complaint.

56. ("[A] tangible employment action taken by the supervisor becomes for Title VII purposes the act of the employer.");Faragher, 524 U.S. at 804-05.

57. To sustain vicarious liability in a hostile work environment action, the Plaintiff must show Absent a tangible employment action, (1) the employer exercised reasonable care to prevent or correct promptly any such sexual harassment, and (2) the employee did not unreasonably fail to take advantage of any preventative or corrective opportunities provided by the employer or to avoid harm otherwise.

58. To establish a *prima facie* case of discrimination, a plaintiff must show: (1) she is a member of a protected class, (2) she was qualified for the position at issue, (3) she was the subject of an adverse employment action, and (4) she was treated less favorably because of her membership in that protected class than were other similarly situated employees who were not members of the protected class, under nearly identical circumstances. *Vaughn v. Woodforest Bank*, 665 F.3d 632,

636 (5th Cir. 2011); *Lee v. Kansas City S. Ry. Co.*, 574 F.3d 253, 259 (5th Cir. 2009) (addressing racial discrimination claim). "In work-rule violation cases, a Title VII plaintiff may establish a prima facie case by showing 'either that [s]he did not violate the rule or that, if [s]he did, [employees outside the protected class] who engaged in similar acts were not punished similarly.'" *Mayberry v. Vought Aircraft Co.*, 55 F.3d 1086, 1090 (5th Cir. 1995) (quoting *Green v. Armstrong Rubber Co.*, 612 F.2d 967, 968 (5th Cir. 1980)).

59. In the instant matter, the Plaintiff has experienced both types of prohibited and legally actionable types of discriminatory conduct which have been timely filed with the EEOC, thereby giving rise to the Court's jurisdiction in the instant matter.

60. The Plaintiff has suffered a substantial amount of losses in the form of damages directly and proximately as a result of the Defendant's repeated misconducts in the instant matter including but not limited to loss of employment and wages in addition to costs of mental health treatment for extreme emotional distress and depression.

61. The Plaintiff is seeking compensatory damages for the misconducts described herein in addition to any and all other relief deemed necessary and applicable.

## COUNT II

## HOSTILE WORK ENVIRONMENT

## (AGAINST ALL DEFENDANTS

62. The Plaintiff hereby references and incorporates Paragraphs 1 through 51 as if though set forth herein at length.

63. To establish a *prima facie* case of hostile work environment sexual harassment, a plaintiff must demonstrate that: (1) she is [a] member of a protected group; (2) she was the victim of uninvited sexual harassment; (3) the harassment was based on sex; (4) the harassment affected a

"term, condition, or privilege" of [her] employment; and (5) her employer knew or should have known of the harassment and failed to take prompt remedial action.

64. Where the harassment is allegedly committed by a supervisor with immediate or successively higher authority over the harassment victim, the plaintiff employee need only satisfy the first four elements previously described. *Celestine v. Petroleos de Venezuella SA*, 266 F.3d 343, 353-54 (5th Cir. 2001) (citing *Faragher v. City of Boca Raton*, 524 U.S. 775, 807 (1998)).

65. "For sexual harassment to be actionable, it must be sufficiently severe or pervasive to alter the conditions of [the victim's] employment and create an abusive working environment." *Harvill,* 433 F.3d at 434 (quoting *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 67 (1986)) (alteration in original) (internal quotation marks omitted).

66. In determining whether a work environment is "hostile" or "abusive" within the meaning of Title VII, the court is to look at the totality of the circumstances, including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating; or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harvill*, 433 F.3d at 434 (quoting *Harris v. Forklift*, 510 U.S. 17, 23 (1993)).

67. Further, "'[t]o be actionable, the challenged conduct must be both objectively offensive, meaning that a reasonable person would find it hostile [or] abusive, and subjectively offensive, meaning that the victim perceived it to be so.'" *Harvill,* 433 F.3d at 434 (quoting *Shepherd v. Comptroller of Pub. Accounts*, 168 F.3d 871, 874 (5th Cir. 1999)).

68. Additionally, in supervisor sexual harassment cases, if the supervisor's conduct is found to be severe or pervasive, the employer is vicariously liable unless the employer can establish both prongs of the affirmative defense set forth in *Faragher* and *Burlington Indus., Inc. v. Ellerth*, 524

U.S. 742, 765 (1998). *Wyatt v. Hunt Plywood Co., Inc.*, 297 F.3d 405, 409 (5th Cir. 2002) (citation and footnotes omitted).

To establish the *Ellerth/Faragher* affirmative defense, "the employer must show that (1) the employer exercised reasonable care to prevent and correct promptly any sexual harassment, *and* (2) the complaining employee unreasonably failed to take advantage of any preventative or corrective opportunities provided by the employer." *Id.*

69. In the instant matter, the Plaintiff has experienced the above types of prohibited and legally actionable types of discriminatory conduct which have been timely filed with the EEOC, thereby giving rise to the Court's jurisdiction in the instant matter.

70. The Plaintiff has suffered and continues to suffer a substantial amount of losses in the form of damages directly and proximately as a result of the Defendant's misconduct in the instant matter including but not limited to loss of employment and wages in addition to costs of mental health treatment for extreme emotional distress and depression.

71. The Plaintiff is seeking compensatory damages for the misconduct described herein in addition to any and all other relief deemed necessary and applicable.

## COUNT III

## RETALIATION

## (AGAINST ALL DEFENDANTS

72. The Plaintiff hereby references and incorporates Paragraphs 1 through 51 as if though set forth herein at length.

73. It is "an unlawful employment practice for an employer to discriminate against any of [its] employees . . . because [the employee] has opposed any practice made an unlawful employment practice" under Title VII, or "because [the employee] has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing" under Title VII. 42 U.S.C. § 2000e-3(a); *see also Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 269 (2001). Whether the employee opposes an unlawful practice or participates in a proceeding against the employer's activity, the employee must hold a reasonable belief that the conduct he opposed violated Title VII. *Long v. Eastfield Coll.*, 88 F.3d 300, 305 (5th Cir. 1996).

74. To establish a *prima facie* case of retaliation in this circuit, a plaintiff must show that: (1) she engaged in a protected activity; (2) she experienced an adverse employment action following the protected activity; and (3) a causal link existed between the protected activity and the adverse employment action. *McCoy v. City of Shreveport*, 492 F.3d 551, 556-57 (5th Cir. 2007) (footnote and citation omitted); *Montemayor v. City of San Antonio*, 276 F.3d 687, 692 (5th Cir. 2001); *Mota v. University of Texas Houston Health Sci. Ctr.*, 261 F.3d 512, 519 (5th Cir. 2001). The establishment of a *prima facie* case gives rise to an inference of retaliation. *Montemayor*, 276 F.3d at 692. This inference, in turn, shifts the burden of production to the defendant, who must then articulate a legitimate, nondiscriminatory or nonretaliatory reason for the challenged employment action. *McCoy*, 492 F.3d at 557. Once a defendant articulates such a reason, the inference of discrimination or retaliation raised by the *prima facie* showing drops from the case. *Montemayor*, 276 F.3d at 692. Absent a reason, a *prima facie* showing is sustained.

75. In the instant matter, the Plaintiff was terminated not even one full day after filing with the EEOC pursuant to their rights to be free from unequal treatment on the basis of gender, thereby giving rise to the instant claim for retaliation.

76. No justification or reasoning provided that was sufficient for the adverse action exists and therefore the misconduct was retaliation as prohibited by law.

77. The Plaintiff has suffered and continues to suffer a substantial amount of losses in the form of damages directly and proximately as a result of the Defendant's misconduct in the instant matter including but not limited to loss of employment and wages in addition to costs of mental health treatment for extreme emotional distress and depression.

78. The Plaintiff is seeking compensatory damages for the misconduct described herein in addition to any and all other relief deemed necessary and applicable.

## COUNT IV

## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

## (AGAINST ALL DEFENDANTS)

79. The Plaintiff hereby references and incorporates Paragraphs 1 through 51 as if though set forth herein at length.

80. The Texas law tort of intentional infliction of emotional distress requires proof of the following elements: (1) the defendant acted intentionally or recklessly; (2) the defendant's conduct was extreme and outrageous; (3) that conduct caused the plaintiff emotional distress; and (4) the emotional distress suffered by the plaintiff was severe. *Estate of Newton ex rel. Newton v. Grandstaff*, No. 3:10-CV-809-L, 2012 WL 3013929, at *7 (N.D. Tex. July 20, 2012) (Lindsay, J.) (citing *Twyman v. Twyman*, 855 S.W.2d 619, 621–22 (Tex.1993)). The Texas Supreme Court has recognized that an intentional infliction of emotional distress claim is "a 'gap-filler' tort, judicially created for the limited purpose of allowing recovery in those rare instances in which a defendant intentionally inflicts severe emotional distress in a manner so

unusual that the victim has *no other* recognized theory of redress." *Standard Fruit & Vegetable Co. v. Johnson,* 985 S.W.2d 62, 68 (Tex. 1998) (emphasis added).

81. In the instant matter, the Defendants acted in various regards intentionally and recklessly in a manner that was extreme and outrageous in nature with all facts disputed to be determined in a trial by jury.

82. The misconducts were the direct and proximate causation of damages to the Plaintiff including but not limited to economic and non-economic damages with all facts disputed to be determined in a trial by jury.

83. The Plaintiff avers that she suffered a severe amount of emotional distress over the extended period of time that she were subjected to the various explicit forms of unequal treatment expressed in the statement of fact and requests judgment in their favor in this regard.

84. The Plaintiff is seeking compensatory damages for the misconduct described herein in addition to any and all other relief deemed necessary and applicable.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for judgment against the Defendant as follows:

a. For general and special damages according to proof;

b. For exemplary damages, according to proof;

c. For pre-judgment and post-judgment interest on all damages awarded;

d. For reasonable fees associated with filing

e. For costs of suit incurred,

f. For declaratory relief,

g. For such other and further relief as the Court may deem just and proper.

ADDITIONALLY, the Plaintiff demands a trial by jury as to all facts contested herein.

DATED: June 14, 2021                    Respectfully Submitted,

_____

GINGER POON